IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| STACEY DARBY, | ) | C/A No. 2:20-cv-03694-TLW-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | **REPORT AND RECOMMENDATION** |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Stacey Darby ("Plaintiff"), brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B). For the reasons set forth herein, the undersigned recommends reversing the decision of the Commissioner and remanding for further consideration.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 50 years old on her alleged disability onset date, October 22, 2016. (R. at 17, 34.) Plaintiff claims disability due to, *inter alia*, right shoulder injury, right bicep tenotomy, left

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Under Rule 25(d) of the Federal Rules of Civil Procedure, she is automatically substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

shoulder injury, left bicep tenotomy, and neck pain. (R. at 252.) Plaintiff has at least a high school education and has past relevant work as a motor vehicle assembler. (R. at 34 .)

Plaintiff filed an application for DIB on January 5, 2017. (R. at 17.) Her application was denied initially and on reconsideration. (R. at 17) After a hearing before an Administrative Law Judge ("ALJ") on March 15, 2019, the ALJ issued a decision on April 16, 2019, in which the ALJ found that Plaintiff was not disabled. (R. at 17–36.) The Appeals Council denied Plaintiff's request for review, (R. at 5–10), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1) The claimant meets the insured status requirements of the Social Security Act through March 31, 2021.

(2) The claimant has not engaged in substantial gainful activity since October 22, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

(3) The claimant has the following severe impairments: morbid obesity and bilateral shoulder pain syndrome status post right shoulder scope with debridement and biceps tenotomy and status post left shoulder arthroscopy with extensive debridement and biceps tenotomy (20 CFR 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently. She could sit for 3 hours in an 8-hour day, stand for 6 hours in an 8-hour day, and walk for 3 hours in an 8-hour day. She could push/pull as much as she could lift/carry, but she could operate hand controls occasionally bilaterally. She could reach overhead bilaterally occasionally and frequently reach otherwise bilaterally. She could frequently climb ramps and stairs, occasionally climb ladders/ropes/scaffolds, occasionally balance, stoop, kneel, and crouch, and

        never crawl. She could have frequent environmental exposure to unprotected heights, moving mechanical parts, and vibration.

(6)      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7)      The claimant was born on May 20, 1966 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

(8)      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9)      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

(10)      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

(11)      The claimant has not been under a disability, as defined in the Social Security Act, from October 22, 2016, through the date of this decision (20 CFR 404.1520(g)).

(R. at 17–36.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2)

3

has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof with respect to the first four steps of the analysis. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Once the claimant has established an inability to return to his past relevant work, the burden shifts to the Commissioner to show that the claimant—considering his age, education, work experience, and residual functional capacity—can perform alternative jobs and that such jobs exist in the national economy. SSR 82-62, 1982 WL 31386, at *3; *Grant*, 699 F.2d at 191; *Pass*, 65 F.3d at 1203; *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the Commissioner supported his findings with substantial evidence and applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a de novo review of the evidence and requires that the court uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340

(4th Cir. 2012); *Mascio*, 780 F.3d at 640; *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021); 42 U.S.C. § 405(g).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Dowling*, 986 F.3d at 383 (citing *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). It is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson*, 810 F.3d at 207 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). In reviewing for substantial evidence, the court does not undertake to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hancock*, 667 F.3d at 472; *Arakas*, 983 F.3d at 95; *Dowling*, 986 F.3d at 383. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the reviewing court must defer to the ALJ's decision. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (citing *Hancock*, 667 F.3d at 472).

However, the court does not "reflexively rubber-stamp an ALJ's findings." *Dowling*, 986 F.3d at 383 (citing *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). An ALJ may not cherry-pick, misstate, or mischaracterize material facts. *Arakas*, 983 F.3d at 99 (citing *Lewis*, 858 F.3d at 869). Rather, ALJs "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189).

## **DISCUSSION**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ erred in assessing certain opinion evidence; and (2) the ALJ failed to consider the combined effect of all of Plaintiff's impairments. (Dkt. No. 10.) The undersigned considers these arguments, below.

### A.     Consideration of Opinion Evidence

Plaintiff argues that the ALJ erred in evaluating: (1) opinions contained in a Functional Capacity Evaluation performed by physical therapist, Kurt E. Garber, DPT[2]; (2) opinions contained in an Independent Medical Examination performed by William DeVault, MD; (3) and opinions rendered by Plaintiff's treating orthopedist, Michael P. Hoeing, MD. (Dkt. No. 10 at 19–25.)

#### 1.     Standard

An ALJ is required to assign weight to every medical opinion in a claimant's record. 20 C.F.R. §§ 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. 404.1527(c)(2). The Fourth Circuit has recently reiterated the treating physician rule in *Arakas v. Commissioner*, explaining that a treating physician "opinion *must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by the other substantial evidence in the record."[3] 983 F.3d at 107 (emphasis in original) (citing 20 C.F.R. § 404.1527(c)(2); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987)). If a treating physician's opinion is not accorded controlling weight, it still must be evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the

---

[2] DPT is an abbreviation for Doctor of Physical Therapy.
[3] The Social Security Administration has amended the "Treating Physician Rule," effective March 27, 2017, for claims filed after that date. *See* 20 C.F.R. § 416.920c; *see also Marshall v. Berryhill*, Case No. 16-cv-00666-BAS-PCL, 2017 WL 2060658, at *3 n.4 (S.D. Cal. May 12, 2017). Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency. 20 C.F.R. § 404.1520c(a), (c)(1)-(2). Because Plaintiff's claim was filed before the effective date of the change, the decision is reviewed under the regulation in effect at that time, 20 C.F.R. § 404.1527.

6

physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6).

### 2.    The ALJ's Decision

The ALJ considered the opinion evidence highlighted by Plaintiff throughout his decision. He first summarized this opinion evidence as follows:

> In August 2016, the claimant underwent a Functional Capacity Examination (FCE) that showed she is capable of functioning at a sedentary to light level of work based on her material handling performance. She tolerated standing, and desk level reaching on a constant basis. She performed stair climbing and floor-level reaching on a frequent basis. She performed sitting, walking, ladder climbing, overhead reaching, balancing, stooping (bending), kneeling, and crouching on an occasional basis. She was not able to perform/tolerate crawling. She demonstrated a maximum occasional waist to shoulder lifting capacity of 10 lbs. She demonstrated both upper extremity object handling, fingering, simple, and firm grasping, and fine/gross manipulation on a constant basis (SF).
>
> In 2016, Independent Medical Examiner, Dr. De Vault, M.D., determined that the claimant had 48% right shoulder permanent and partial impairment and 45% left shoulder permanent and partial impairment ( 4F/6).
> . . .
>
> In July 2017, Dr. Hoenig, the treating orthopedist, remarked, "Due to her continued pain, I think it would be difficult for her to get back to a strenuous job. I think she would rarely be able to lift anything more than 5 pounds, and will therefore likely be permanently disabled" (l0F/4). . . .

(R. at 25–26.) The ALJ again repeated the findings of August 2016 Functional Capacity Evaluation in his discussion of the medical evidence, Plaintiff's subjective remarks, and Plaintiff's daily activities. (R. at 27.) In this same discussion, the ALJ highlighted Plaintiff's visit with Dr. Hoeing in July 2017:

7

> On July 17, 2017, the claimant returned to treating orthopedist, Dr. Hoenig, with complaints of bilateral shoulder pain. However, according to the Review of Systems section, she denied weakness, tremors, numbness, disturbances in coordination, tingling, poor balance, memory loss, anxiety, and depression. The physical examination was no more than marginally abnormal. For example, the claimant was healthy appearing. She was alert, oriented, and in no acute distress. She had normal gait. She was not using durable goods. The shoulders had active forward elevation 160 degrees, external rotation 30 degrees, and internal rotation to L4. Her shoulder strength was good. There was only a little bit of pain with resisted forward elevation, mild pain with resisted elbow flexion, and mild pain with resisted supination, despite subjective reports of exquisite tenderness of the biceps muscles. She was neurovascularly intact (l0F/1-4).
>
> The claimant has few, if any, additional treatment sessions with Dr. Hoenig, or any other orthopedist or neurologist, after the visit in July 2017.

(R. at 28.) After summarizing the evidence, the ALJ assigned weight to the highlighted opinion evidence as follows:

> I give significant weight to the findings during the FCE (5F/2). In most ways, the FCE is consistent with the residual functional capacity. On the other hand, I give little weight to the indication that the claimant could lift no more than 14 pounds maximum, for example. The physical therapist's observations and the objective findings are based upon the claimant's performance on tasks designed to predict her capacity to perform basic work demands in a work setting. However, a physical therapist rather than a physician conducted the FCE. A physical therapist is a non-acceptable medical source. The physical therapist has no treating relationship with the claimant. The physical therapist evaluated the claimant on just two occasions. The claimant's performance during the FCE and the physical therapist's remarks must be considered in light of the record as a whole.
>
> I assign medium weight to Dr. De Vault's Worker's Compensation evaluation,[4] but Worker's Compensation uses an evaluation process that differs from SSA's sequential step framework, including the use of percentages of disability, which do not correspond with any particular functional limitation in the residual functional capacity or a specific finding during the sequential step evaluation (4F/6). Dr. De Vault's determinations support that there are functional limitations associated with the shoulders, however.
> . . .
>
> I do not give controlling weight to Dr. Hoenig's opinion (l0F/4). The opinion is not well supported by medically acceptable clinical or laboratory diagnostic techniques and the opinion is not inconsistent [sic] with the other substantial evidence in the record. Instead, I give this opinion little weight. Dr. Hoenig is the orthopedic

---

[4] In her brief, Plaintiff refers to this as an Independent Medical Examination. (Dkt. No. 10 at 20.)

> specialist who performed the claimant's shoulder surgeries. Dr. Hoenig has examined the claimant in a clinical setting on multiple occasions. However, Dr. Hoenig has not treated the claimant since he made his statement in 2017. Likewise, apart from the surgeries, all treatment to the shoulders has been conservative. Dr. Hoenig's statement is inconsistent with his own treatment notes, as well as treatment notes from Dr. Han. Dr. Hoenig's statement is inconsistent with the FCE, the IME, and the consultative examination. Dr. Hoenig's statement is inconsistent with the State Agency physical medical consultants and some of the claimant's reported daily activities.

(R. at 30, 32.)

### 3. Analysis

In her brief, Plaintiff disputes the weight given by the ALJ to the opinions of physical therapist, Kurt Garber; consultative examiner, Dr. Williams DeVault; and treating orthopedist, Dr. Michael Hoeing. (Dkt. No. 10 at 22–25.) Mr. Garber and Dr. Williams are considered nontreating sources—they examined Plaintiff and then offered opinions. "The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources." *Robertson v. Saul*, No. 5:18-CV-454-D, 2019 WL 7585180, at *5 (E.D.N.C. Dec. 19, 2019) (citing 20 C.F.R. § 404.1527(c)), *adopted by*, 2020 WL 241552 (E.D.N.C. Jan. 14, 2020). Additionally, as a physician, Dr. Williams is considered an "acceptable medical source," while Mr. Garber, as a physical therapist, is considered an "other source." *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006). "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals.'" *Id*. at *5.

9

In his decision, the ALJ gave "significant weight" to Mr. Garber's findings because "in most ways," the evaluation "is consistent with the residual functional capacity." (R. at 30.) The ALJ continued, "On the other hand, I give little weight to the indication that the claimant could lift no more than 14 pounds maximum." (R. at 30.) As Plaintiff notes, the ALJ did not give any compelling reason why he gave this specific lifting limitation little weight, when the remaining findings by Mr. Garber were apparently afforded significant weight. The ALJ generally stated that Mr. Garber is "a non-acceptable medical source"; he "has no treating relationship with the claimant"; and he "evaluated the claimant on just two occasions." (R. at 30.) The ALJ further stated that the "claimant's performance during the FCE and the physical therapist's remarks must be considered in light of the record as a whole." (R. at 30.) This explanation by the ALJ gives no compelling basis as to why the lifting limitation in particular is afforded little weight, while the majority of Mr. Garber's findings are afforded significant weight. This lack of explanation is particularly concerning given the ALJ's assessment of the remaining opinion evidence, as argued by Plaintiff.

Specifically, Dr. DeVault incorporated Mr. Garber's lifting limitations into his evaluation, stating, "Based on [Plaintiff's] functional capacity evaluation in August 2016, Stacy Darby is suitable for sedentary to a light level of work . . . . On an occasional basis she can do a floor to waist lift of 14 pounds, waist to shoulder lift of 10 pounds, 12 inch to waist level of 12 pounds, [and] shoulder to overhead lift of 8 pounds . . . ." (R. at 341.) Based on the ALJ's decision, it seems he ignored that Dr. DeVault included Mr. Garber's findings in his evaluation. In his decision, the ALJ only briefly summarized the percentages of "impairment" Dr. DeVault assigned to Plaintiff's shoulders. (R. at 25.) Then, in his assessment of the opinion evidence, the ALJ assigned "medium weight" to Dr. DeVault's evaluation, noting that this was a Worker's Compensation evaluation

10

that uses percentages of disability, "which do not correspond with any particular functional limitation in the residual functional capacity or a specific finding during the sequential step evaluation." (R. at 30.) Relevant here, the ALJ stated that "Dr. DeVault's determinations support that there are functional limitations associated with the shoulders, however." (R. at 30.)

The ALJ's assessment of Dr. Hoeing's opinion further confuses this issue. The ALJ declined to give "controlling weight" to Dr. Hoeing's opinion that "Due to her continued pain, I think it would be difficult for her to get back to a strenuous job. I think she would rarely be able to lift anything more than 5 pounds, and will therefore likely be permanently disabled." (R. at 26, 32.) In support of this assessment, the ALJ found, *inter alia*, that "Dr. Hoeing's statement is inconsistent with the FCE, [and] the IME . . . ."[5] (R. at 32.) The ALJ provided no clarification of what specifically was inconsistent among these findings, however. As discussed above, the only express lifting limitations mentioned by Dr. DeVault were those incorporating Mr. Garber's findings. And, Mr. Garber found Plaintiff could lift no more than 14 pounds. While this lifting limitation is greater than the 5 pounds opined by Dr. Hoeing, both limitations still place Plaintiff outside of the light work category assessed by the ALJ in his RFC finding.[6] As Plaintiff argues, given her qualifications, a limitation to sedentary work would render her disabled under Grid Rule 201.12.[7] (Dkt. No. 10 at 25.)

Based on the foregoing, the undersigned cannot find that ALJ's assessment of the opinion evidence is supported by substantial evidence. The ALJ failed to offer any compelling reason why the specific lifting limitation opined by Mr. Garber was afforded "little weight," while the

---

[5] Although the ALJ did not provide exhibit cites for the referenced "FCE" and "IME," it appears he was referring to Mr. Garber's Functional Capacity Evaluation and Dr. DeVault's Independent Medical Evaluation here.

[6] "Sedentary work involves lifting no more than 10 pounds at a time," while "[l]ight work involves lifting no more than 20 pounds at a time." 20 C.F.R. § 416.967(a), (b).

[7] Grid Rule 201.01 provides that an individual who can only perform sedentary work, is closely approaching advanced age, has a high school education, and unskilled past work directs a decision of disabled. *See* Program Operations Manual System, https://secure.ssa.gov/apps10/poms.NSF/lnx/0425025035 (last visited, Oct. 18, 2021).

remainder of Mr. Garber's findings were afforded "significant weight." The ALJ further appeared to ignore that Dr. DeVault included these lifting limitations in his Independent Medical Evaluation. Then, most critically, the ALJ found Dr. Hoeing's opinion inconsistent with the findings of Mr. Garber and Dr. DeVault, without any explanation. As noted above, the Fourth Circuit has found that a treating physician "opinion *must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by the other substantial evidence in the record." *Arakas*, 983 F.3d at 107 (emphasis in original). As shown above, the ALJ failed to sufficiently explain how Dr. Hoeing's opinion is contradicted by the other substantial evidence in the record, where the three opinions at issue all support finding Plaintiff cannot perform light work.[8] *See Jordan v. Colvin*, No. 8:12-CV-01676-DCN, 2013 WL 5317334, at *8 (D.S.C. Sept. 20, 2013) (explaining that the court could not divine how the physician's medical opinion was inconsistent with the longitudinal record without further analysis, especially where there were examining doctors who appeared to provide consistent opinions); *see also Alexander v. Colvin*, No. 9:14-CV-2194-MGL-BM, 2015 WL 2399846, at *6 (D.S.C. May 19, 2015) ("Thus, although the ALJ may have properly considered the relevant factors and may have had appropriate reasons in discounting the physicians' opinions (as the Commissioner argues in his objections), . . . . the ALJ must be more specific when discounting a treating physician's opinion.").

### B.    Remaining Allegations of Error

Plaintiff also argues that the ALJ failed to consider the combined effect of all of Plaintiff's impairments. (Dkt. No. 10.) The undersigned does not address this remaining allegation, as it may

---

[8] Here, the undersigned recognizes that the ALJ offered additional reasons for finding Dr. Heoing's opinion is inconsistent with the record. (R. at 32.) However, the ALJ relied at least in part on the findings by Mr. Garber and Dr. DeVault to afford Dr. Hoeing's opinion less than controlling weight. (R. at 32.) Accordingly, for the reasons discussed above, the undersigned cannot find the ALJ's assessment of Dr. Hoeing's opinion is supported by substantial evidence.

12

be rendered moot on remand. As part of the overall reconsideration of the claim upon remand, the ALJ should, if necessary, also take into consideration the additional allegation of error raised by Plaintiff.

## **CONCLUSION**

It is therefore **RECOMMENDED**, for the foregoing reasons, that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** for a new hearing consistent with this Report & Recommendation

IT IS SO RECOMMENDED.

October 18, 2021

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).